UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID JONATHAN TULIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:22-cv-00911 |
| WILILAM ORANGE, et al., | ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Report and Recommendation ("R&R") (Doc. No. 52) advising it to grant Defendants' Roger Page, John Crawford, and Administrative Office of the Courts John and Jane Doe's Motion to Dismiss (Doc. No. 7); Defendant Atrium Hospitality LP's Motion to Dismiss (Doc. No. 11); Defendant City of Franklin's Motion to Dismiss (Doc. No. 12); and Defendant William Orange's Motion to Dismiss (Doc. No. 22). Plaintiff, proceeding *pro se*, filed an Objection to the R&R (Doc. No. 56) on May 26, 2022, which Defendants responded on June 7 and 8, 2023. (Doc. Nos. 59–61). For the following reasons, the R&R (Doc. No. 52) is **APPROVED AND ADOPTED**.

**I.    BACKGROUND**

The Court will not repeat the factual background and procedural history of this case in full because they are aptly set forth in the R&R. (Doc. No. 52 at 2–5). To summarize, David Jonathan Tulis is a press reporter for the NoogaRadio network, and, on November 6, 2021, he traveled to Franklin, Tennessee to report on a judicial conference meeting held at the Embassy Suites Cool Springs Hotel (the "Hotel"). (Doc. No. 1 ¶¶ 8, 15). In his Complaint, Tulis alleges eleven "instances" that give rise to his claims. (See generally Doc. No. 1). The first nine instances

concern events that took place at the Hotel on November 6, 2021, when various Defendants asked, then demanded, and, ultimately, forced Tulis to leave. (Doc. No. 1 ¶¶ 16–25). What Tulis describes as the tenth instance was two road trips to Williamson County that Tulis claims he was forced to make—the first, for booking at the Williamson County jail on November 11, 2021, and, the second, for a hearing in General Sessions Court, on December 14, 2021. (Id. ¶ 26). The eleventh instance was the "burden" of attending the December 14 hearing.[1] (Id. ¶ 27).

On November 5, 2022, Tulis placed his Complaint in the mail. However, the Complaint was not received and marked as filed by the Clerk's Office until November 9, 2022.

## II. THE MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION

On April 28, 2023, the Magistrate Judge recommended that the Court grant Defendants' Motions to Dismiss because the Complaint was not timely filed. (Doc. No. 52 at 14–15). The Magistrate Judge explained that "it is beyond dispute that the statute of limitations for Section 1983 and 1985 claims that rise in Tennessee are subject to the one-year limitations period set out in Tenn. Code. Ann. § 28-3-104(a)(1)(B)," (id. at 9 (citing Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir. 2005); Carver v. U Haul Co., 830 F.2d 193 (6th Cir. 1987))), and "Plaintiff was clearly aware of his claimed injuries at the time that the events at issue occurred on November 6, 2021" because "[t]hese events were obvious and were sufficient to have alerted Plaintiff that he needed to act to protect his rights." (Doc. No. 52 at 9–10). Accordingly, the Magistrate Judge reasoned that Tulis's complaint, which "bears a stamp of 'received' by the Clerk's Office on

---

[1] Notably, Defendants only required that Tulis report for booking prior to December 14, 2021, (Doc. No. 65-1 at 1), and, in contrast to his claim regarding the December 14 hearing, Tulis does not cite the booking itself as an alleged instance of harm. (See generally Doc. No. 1).

November 9, 2022, and [] was filed that same day," (id. at 11), is untimely regardless of whether it was placed in the mail prior to the filing deadline.[2] (Id.).

## III. TULIS'S OBJECTION

On May 26, 2023, Tulis filed his Objection to the Report and Recommendation (Doc. No. 56) and accompanying Memorandum of Law (Doc. No. 57). These filings were also untimely. However, in light of Tulis's *pro se* status, the Court shall treat his filings as if they had reached the Clerk's Office on the day that they were delivered to the courthouse. (See Doc. No. 59-1 at 1 (explaining that the filings were properly file-stamped)).

Pursuant to Federal Rule of Civil Procedure 72(b)(3), "[t]he [D]istrict [J]udge must determine de novo any part of the [M]agistrate [J]udge's disposition [on a dispositive motion] that has been properly objected to. The [D]istrict [J]udge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the [M]agistrate [J]udge with instructions." See also 28 U.S.C. § 636(b)(1)(C). Only "specific written objections" to the Magistrate Judge's proposed factual findings and legal conclusions are considered "proper" for the district court's consideration. Fed. R. Civ. P. 72(b)(2). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." Cole v. Yukins, 7 F. App'x 354, 356 (6th Cir. 2001) (citing Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995)). Moreover, the Court's Local Rules require that proper objections "must state with particularity the specific portions of the Magistrate Judge's report or

---

[2] The Magistrate Judge noted that "although the one-year period expired on November 6, 2022, because that date was a Sunday the time for Plaintiff to file his complaint was extended until the following Monday, November 7, 2022," (Doc. No. 52 at 12 n.5), pursuant to Federal Rule of Civil Procedure 6(a)(1)(C).

3

proposed findings or recommendations to which an objection is made . . . to apprise the District Judge of the bases for the objections." L.R. 72.02(a).

Construing his arguments fairly and liberally given his *pro se* status, his objections appear to fall into two camps: (1) dissatisfaction with the Magistrate Judge's refusal to apply the "mailbox rule" to save his Complaint, (Doc. No. 56 at 3–4), and (2) assertions that the Magistrate Judge overlooked well-pleaded claims. (Id. at 1–2, 4–5).[3]  The Court will address them in turn.

A. <u>Whether the Magistrate Judge Correctly Applied the "Mailbox Rule"</u>

Tulis's first group of objections—that this Magistrate Judge erred by not applying the "mailbox rule"—is easily discarded. Binding precedent requires that this Court consider Tulis's Complaint filed only when it is received by the Clerk's Office. In <u>Torras Herreria y Construcciones, S.A. v. M/V Timur Star</u>, the Sixth Circuit made clear that, "if mailed, the filing is accomplished only when actually received by the clerk or when placed in the clerk's post office box." 803 F.2d. 215, 216 (6th Cir. 1986). Tulis's attempt to distinguish <u>Torras</u> is of no moment. (<u>See</u> Doc. No. 56 at 3–4 (stating that <u>Torras</u> was inapposite because it was "an attorney-filed case involving two extensions of time and a late-arriving [un]timely filed Rule 529(b) motion")). Neither <u>Torras</u>, nor any court interpreting <u>Torras</u> has construed the case's holding to apply to non-incarcerated litigants or only in certain circumstances.  <u>See generally</u> <u>Torras</u>, 803 F.2d. 215 (making no such distinction); <u>see also, e.g.</u>, <u>McNeely v. Thompson</u>, No. 13-cv-13790, 2014 WL

---

[3] Aside from these two categories of objections, Tulis also objects to the Magistrate Judge's reliance on <u>Johnson v. City of Cincinnati</u>, 310 F.3d 484 (6th Cir. 2002) because it concerned malicious prosecution rather than false imprisonment or arrest. (Doc. No. 56 at 3). However, this objection falls flat. Binding precedent makes clear that Fourth Amendment jurisprudence does not credit the distinction that Tulis attempts to draw. <u>See</u> <u>Dibrell v. City of Knoxville, Tenn.</u>, 984 F.3d 1156, 1160–61 (6th Cir. 2021) ("[T]he Fourth Amendment does not adopt separate bans for false arrests, false imprisonments, and malicious prosecutions. It establishes a single ban on unreasonable seizures.").

806847, at *5–*6 (E.D. Mich. Feb. 28, 2014) (relying on Torras in determining that the *pro se* plaintiff failed to timely file his complaint alleging § 1983 claims because "it is well established that filings that reach the clerk's office after the deadline are untimely, even if mailed before the deadline") (internal citations, quotation marks, and brackets omitted). Equally unavailing is his creative interpretation of Federal Rule of Civil Procedure 5. Regardless of how Tulis might read Rule 5, this Court must follow the Rule as understood by the Sixth Circuit.[4]

The above allows for a single conclusion: the Magistrate Judge was correct in not applying the "mailbox rule." Tulis's first group of objections to the contrary must fail.[5]

B. Whether the Magistrate Judge Overlooked Well-Pleaded Claims

Tulis's second group of objections requires more discussion. Specifically, Tulis argues that the Magistrate Judge erred by: (1) ignoring that the harm of Defendants' infringement on Tulis's First Amendment rights persists today, (Doc. No. 56 at 1); (2) setting aside the fact the Defendant was booked on November 11, 2023, which is safely within the one-year statute of limitations, (id. at 1–2); and (3) failing to consider "the action's equitable claims and its civic-minded redress." (Id. at 4–5). At first blush, these objections might appear disparate. However, at bottom, each requires the Court to first consider what claims Tulis brought in his Complaint (Doc. No. 1).

---

[4] In what appears to be more of an excuse than a proper objection, Tulis states that he relied on "U.S. [S]upreme [C]ourt Rule 26 and certified time-stamped mailings to show a case timely, even if it arrives after the filing." (Doc. No. 56 at 4). However, the Rules of the Supreme Court of the United States are specific to the Court; they have no application outside of the Supreme Court and do not upend published opinions by a court of appeals on the Federal Rules of Civil Procedure.

[5] Tulis makes a broader challenge to the constitutionality of the Court's rule requiring *pro se* plaintiffs to file either in person or through the mail. (Doc. No. 56 at 3). But the inequality Tulis alleges does not exist. His hypothetical fails to account for Federal Rule of Civil Procedure 6(a)(1)(C), which extended Tulis's filing deadline to November 7, 2022. The "[seventy-nine and one half] hour advantage" that Tulis challenges is fiction. (Doc. No. 57 at 25).

Pursuant to Federal Rule of Civil Procedure 8, a pleading that states a claim for relief "must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). Thus, Rule 8 "proscribes . . . obfuscation of the plaintiff's claims." Kensu v. Corizon, Inc., 5 F.4th 646, 651 (6th Cir. 2021) (emphasis in original) (internal citation omitted). Neither a district court, nor a defendant should have to "fish a gold coin from a bucket of mud to identify the allegations really at issue." Id. (internal quotation marks and citation omitted). This is not to say that the complaint must contain detailed factual allegations—only that the factual allegations supplied must be enough to show a plausible right to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–61; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A plaintiff's *pro se* status does not free him or her of these basic pleading requirements, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), and the Court need not "conjure allegations on the litigant's behalf." Martin v. Overton, 391 F.3d 710, 714 (6th Cir. 2004) (internal quotation marks and citation omitted). But "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 95 (2007) (per curium).

Though Tulis is not a lawyer, his Complaint (Doc. No. 1) contains many of the hallmarks of a professionally prepared complaint. After a brief introduction, Tulis dedicates discrete sections establishing the basis for the Court's jurisdiction, (Doc. No. 1 ¶¶ 1–7), succinctly identifying the parties, (id. ¶¶ 8–14), summarizing the alleged violations of his rights, (id. ¶¶ 15–28), providing additional allegations specific to individual defendants, (id. ¶¶ 29–45), and stating the relief

sought. (Id. ¶ 46). This organization begets clarity and assists the Court in its duty to liberally construe the pleading.

Beginning with a short and plain statement of the grounds for the Court's jurisdiction, Tulis states "[t]he [C]ourt has jurisdiction to hear this case because of the deprived fundamental rights, privileges, or immunities involved." (Doc. No. 1 ¶ 1). He then illuminates which fundamental rights, privileges, or immunities were involved by naming the First and Fourth Amendments, (id. ¶¶ 2–4), and cites the statutes pursuant to which he brings his claims, 42 U.S.C. § 1983 ("§ 1983") and 42 U.S.C. § 1985(3) ("§ 1985(3)"). (Id. ¶¶ 5–6). In doing so, Tulis makes clear that this Court has jurisdiction over his claims pursuant to 28 U.S.C. § 1331, and, by extension, that his claims are based exclusively on federal law.[6]

To understand the contours of his §1983 and §1985(3) claims, the obvious next place to turn is the section titled, "Summary of [R]ights [V]iolations." (Doc. No. 1 ¶¶ 15–28). There, Tulis begins by stating:

> Plaintiff attends the Nov[ember] 6, 2021, judicial conference meeting at the Atrium Hospitality-run hotel in Franklin, and he attends by constitutional right of the press and its appurtenant public uses or purposes. The meeting of government employees, on property under contract with the state of payment, deals with topics that affect the public and taxpayer interest, the convocation among judges who "draft suitable legislation and submit its recommendations to the general assembly," Tenn. Code Ann. § 17-3-107.
>
> Plaintiff pursues his calling by attending the conference by right of the federal first amendment regarding press and free speech; and plaintiff's common law rights as

---

[6] The final paragraph in the section references the alleged amount-in-controversy but goes no further to establish jurisdiction under 28 U.S.C. § 1332, (Doc. No. 1 ¶ 7), and, as the Magistrate Judge observed, "[Tulis] does not rely upon supplemental jurisdiction under 28 U.S.C. § 1367." (Doc. No. 52 at 4 n.4). Accordingly, Tulis has not satisfied Federal Rule of Civil Procedure 8(a)(1)'s minimum requirement as to any state law claim. Fed. R. Civ. P. 8(a)(1). Confirming that he had no intention of brining a state law claim, Tulis did not object to the Magistrate Judge's observation and, instead, stated without qualification that "[t]he suit evokes § 1983 for redress of deprivation of secured rights and damages." (Doc. No. 56 at 2).

7

a man as one of the "free people" of Tennessee, as so named in the state bill of rights art. 1, sect. 24.

(Id. at ¶¶ 15–16). Although he has yet to describe the alleged harms, these paragraphs confirm that he intends to root them, at least in part, in the First Amendment.[7] From this point and until the end of the section, Tulis describes the eleven instances that allegedly give rise to his claims. (Id. at ¶¶ 17–28). As stated previously, the first nine instances occurred at the Hotel on November 6, 2021, and all nine concern Defendants' efforts to keep him from the judicial conference meeting or to remove him once he gained access. (Id. at ¶¶ 17–25). The tenth and eleventh instances occurred on later days. In full, Tulis alleges:

> In the 10th instance of false imprisonment—which includes compelling a person to go to a place to which he does not wish to go if he were at liberty—Orange and his employer [C]ity of Franklin extort plaintiff to make two road trips in furtherance of their unwarranted deprivation by yet another method, a malicious prosecution of their criminal case under color or state law requiring plaintiff travel from Soddy-Daisy to Franklin a total of 612 miles by car. The first trip to the Williamson County jail is for booking, absent any finding by a magistrate of probable cause, injuring plaintiff in his rights. A second trip is Dec[ember] 14, 2021, to a hearing in general session court on probable cause for the arrest.
>
> An 11th instance of unwarranted deprivation of constitutional common law rights under color of law is a 70-minute general sessions court public hearing in which plaintiff was unlawfully burdened with duty, given the continuing failure of the defendants to faithfully execute clearly established law, to argue he is illegally arrested and that the case was void.

(Doc. No 1 ¶¶ 26–27). Tulis then closes out this section by noting that the charge against him was dropped for lack of probable cause. (Id. ¶ 28). In the several paragraphs that make up the next section, "[F]actual [B]ases," Tulis does not allege any additional constitutional harms. (See id. ¶¶

---

[7] The import of his reference to Tennessee Code Annotated § 17-3-107 is unclear. In the Court's best estimation, it alludes to Tulis's rationale for believing he is entitled to attend the judicial conference meeting. However, Tulis omits any connection between this and the First Amendment. (See generally Doc. No. 1). Similarly, Tulis's reference to the "common law rights as a man as one of the 'free people' of Tennessee" (id. ¶ 16), can be set aside because, as already explained, he has barred himself from bringing any state law claim.

8

29–45 (providing additional details about individual defendants and their efforts on November 6, 2021)). The only remaining paragraph is Tulis's request for relief.[8]

This dissection of Tulis's Complaint makes clear what it does and—perhaps more importantly—what is not does include. With the above in mind, the Court now turns directly to Tulis's remaining objections.

*First*, the Magistrate Judge correctly ignored any supposed ongoing infringement of Tulis's First Amendment rights because Tulis did not claim any such infringement occurred in his Complaint. Tulis described discrete eleven instances of supposed harm, (Doc. No. 1 ¶¶ 15–27), and the Magistrate Judge considered them. (Doc. No 52 at 9–15). None even gesture at an *ongoing* harm. This is not to say that Tulis could not bring a claim based on an alleged ongoing infringement; he simply did not do so in the instant complaint. His subsequent filings cannot remedy this defect without further amendment.

*Second*, the Magistrate Judge correctly did not consider Tulis's booking among his claimed Fourth Amendment harms. Tulis did not cite the booking as one of his eleven instances of alleged harm; he complained merely about the drive to the booking. (Doc. No. 1 ¶ 26). But Tulis's drive to be booked at a time and date convenient to him does not constitute a Fourth Amendment deprivation.[9] See DiPasquale v. Hawkins, No. 4:11-cv-2394, 2020 WL 2906433, at *8 (S.D. Ohio

---

[8] Tulis omits any allusion to a "class-based discriminatory animus" motivating Defendants, (see generally Doc. No. 1), and, for that reason, the Court must set aside any attempt at asserting a claim under 42 U.S.C. § 1985(3). See Dunn v. State of Tenn., 697 F.2d 121, 124 (6th Cir. 1982) ("The Court agrees with the district court that plaintiff failed to state a cause of action under 1985(3). To state a claim actionable under this section, a complaint must allege two necessary elements: (1) the existence of a conspiracy, and (2) some 'class-based discriminatory animus behind the conspirators' action.'").

[9] Though immaterial, the Court notes that the lengthy drive to Williamson County on November 11, 2021, was not forced upon Tulis. In the body camera footage from November 6, 2021, which Tulis shared by including the link in an earlier filing, (Doc. No. 37 at 2), he asks if he could report for booking that same day and the officer responds in the affirmative. Were this evidence properly

9

June 3, 2020) (explaining that "an initial detention related to an arrest is legally insufficient to satisfy the deprivation of liberty element of a [Fourth Amendment] claim.").

*Third*, the Magistrate Judge correctly dismissed the action's supposed "equitable claims and its civic-minded redress." Here, Tulis argues he alleges "harms much wider than false imprisonment and false arrest occurring to one man on the day of November 6, 2021," (Doc. No. 56 at 4) and "the [Magistrate Judge] fails to take into account city operational abuses that stretch across two annual calendars and into the lives of 7 million people in Tennessee." (Id. at 5). But as the Court's walk-through of the operative pleadings demonstrates, those abuses—while possible—were not pleaded. (See generally Doc. No. 1).

Accordingly, each of Tulis's objections fail. Any other argument alluded to in his Objection (Doc. No. 56) falls short of the requirements of the Sixth Circuit, Cole v. Yukins, 7 F. App'x at 356, and this Court's Local Rules. L.R. 72.02(a).

## IV. CONCLUSION

Having reviewed *de novo* Tulis's objections to the R&R, the Court agrees with the Magistrate Judge's recommended disposition. The Court orders as follows:

1. Tulis's Objections (Doc. No. 56) are **OVERRULED**.
2. The R&R (Doc. No. 52) is **APPROVED AND ADPOTED**.
3. Defendants' Motions to Dismiss (Doc. Nos. 7, 11, 12, 22) are **GRANTED**.

This is a final order. The Clerk shall enter judgment in accordance with Federal Rule of Civil Procedure 58 and close the file.

---

before the Court and credited, it would establish that Tulis was released and chose to return home rather than report for booking on November 6, 2021, when he was already in Williamson County. It is difficult to fathom how the burden of driving from Soddy-Daisy to Williamson County and back for booking was not, at least in part, self-inflicted.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

11